UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 16-cv-12756

v                                                  Honorable Thomas L. Ludington

COPOCO COMMUNITY CREDIT UNION,

                Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff United States of America initiated this case against Defendant COPOCO Community Credit Union ("COPOCO") on July 26, 2016. *See* Comp., ECF No. 1. Plaintiff alleged that Defendants COPOCO violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3952(a) by repossessing a motor vehicle from a servicemember during military service without a court order, where the servicemember had made payments before entering military service. *See* Compl. ¶¶ 1, 13. Plaintiff further alleges that Defendant has engaged in a pattern or practice of violating the SCRA in violation of § 3852(a) that raises significant issues of public concern. *See* Compl. ¶¶ 19-20.

On August 30, 2016 Defendant COPOCO filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Plaintiff has not sufficiently alleged either that Defendant has engaged in any pattern or practice of violating the SCRA or that its actions raise significant issues of public concern as required by § 3852(a). *See* Def.'s Mot. Dismiss, ECF No. 7. For the reasons stated below, Defendant's motion will be denied.

**I.**

Defendant COPOCO is a credit union chartered under the laws of Michigan with its headquarters located in Bay City, Michigan. Compl. ¶ 5. As of March 31, 2016 Defendant COPOCO had total assets of $101,583,663, including loan assets of nearly $68,000,000. *Id.* at ¶ 7.

Christian and Alyssa Carriveau are a married couple that previously lived in Pinconning, Michigan. *Id.* at ¶ 8. In April of 2014, the Carriveaus purchased a 2010 GMC Terrain from a dealership. *Id.* The Carriveaus obtained financing at the dealership, and received a loan from Defendant COPOCO. *Id.* The Carriveaus made their first loan payment in May of 2014. *Id.*

Shortly thereafter, the Carriveaus moved to the state of Washington, where Mr. Carriveau enlisted in the United States Army as a Private First Class. *Id.* at ¶ 9. He began active duty in January of 2015. *Id.* At that time Mrs. Carriveau contacted Defendant to explain that their next loan payment might be late due to the military's payday schedule. *Id.* The Carriveaus then fell behind on their loan payments during the summer of 2015, but resumed making payments that September. *Id.*

On or about October 5, 2015, Defendant repossessed the vehicle – along with the child's car seat located within – from the Carriveau's driveway without a court order while Mr. Carriveau was away for military training. *Id.* at ¶ 10. Upon learning that the car had been repossessed, Mrs. Carriveau called the Department of Justice on October 6, 2015. *Id.* at ¶ 11. As a result, the Department of Justice arranged to have the vehicle returned to the Carrivaus that evening. *Id.* In the meantime Mrs. Carriveau missed work and suffered emotional distress. *Id.*

On October 29, 2015, the Department of Justice notified Defendant that it was opening an investigation into Defendant's motor vehicle loan servicing policies, practices, and procedures. *Id.* at ¶ 12. During the course of the investigation, the Department of Justice learned that as of

October 6, 2015 Defendant's vehicle repossession procedures did not include checking the Defense Manpower Data Center ("DMDC") database: an automated database provided by the Department of Defense in order to allow lenders to check whether their customers are SCRA-protected service members. *Id*. at ¶¶ 14-15.  Moreover, Defendant did not have any other procedures to determine customers' military status, and until at least December 16, 2015 had no written policies concerning SCRA compliance. *Id.*  The Department of Justice then initiated the present matter on July 26, 2016.  *See* ECF No. 1.

## II.

Defendant now moves to dismiss the Government's suit for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

### A.

The Servicemembers Civil Relief Act was passed "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." 50 U.S.C. App. § 502(1). It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including loans, contract enforcement, and other civil actions. 50 U.S.C. App. § 501 *et seq*. These limitations are "always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943). The original version of the SCRA was passed during World War I. *See Gordon v. Pete's Auto Serv. of Denbigh, Inc*., 637 F.3d 454, 457 (4th Cir. 2011). Following the SCRA's reenactment in 1940, it has been revised and expanded numerous times between 1942 and 2003. *Id*. Despite this long history, there is little precedent interpreting the act.

Defendant's alleged violation falls under 50 U.S.C. § 3952(a)(1), governing protections for purchases or leases under installment contracts. Pursuant to that provision:

> [a]fter a servicemember enters military service, a contract by the servicemember for … the purchase of real or personal property (including a motor vehicle) … may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

*Id*. The Government has brought suit pursuant to § 4041(a), which provides that "[t]he Attorney General may commence a civil action in any appropriate district court of the United States against a person who (1) engages in a pattern or practice of violating this chapter; *or* (2) engages in a violation of this chapter that raises an issue of significant public importance." *Id*. (emphasis added). Accordingly, the Government need only satisfy one of these requirements to state a claim. As the result of such an action, courts may grant any appropriate equitable or declaratory

relief, award appropriate relief, including monetary damages to any aggrieved person, and assess a civil penalty. *See* § 4041(b).

**B.**

Defendant argues that the Government may not proceed in its action because it has proved neither that Defendant has engaged in a pattern or practice in violation of the SCRA, nor that the alleged violation raises an issue of significant public importance. As noted above, the Government need only satisfy one of these requirements to proceed under § 4041(a). The Government argues that, in failing to check the DMDC database or employ any other procedures to determine customers' military status as part of its vehicle repossession procedures, Defendant's policies and practices would inevitably lead to violations of the SCRA. The Government further argues that, because it has alleged that Defendant may have illegally repossessed vehicles of other SCRA-protected servicemembers, it has sufficiently alleged a "pattern or practice" for the purpose of the motion to dismiss stage

The parties agree that Title VII jurisprudence provides an analogue for determining whether the government has sufficiently alleged a "pattern or practice of violating [the SCRA]." As explained by the Supreme Court in *International Brotherhood of Teamsters v. United States*, the government "*ultimately* ha[s] to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." 431 U.S. 324, 336 (1977) (emphasis added). However, this is not a plaintiff's initial burden. The Supreme Court further explained:

> At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed.

*Id*. at 360.

While Title VII jurisprudence is a helpful guide, there is an important distinction between Title VII and § 3952 of the SCRA. Namely, while Title VII requires a plaintiff to prove that the defendant intentionally discriminated against the plaintiff, § 3952(a) is a strict liability provision. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988). A plaintiff in a § 3952(a) case therefore need not allege any intentional violation of the statute.

Plaintiff's allegations suggest that the violation with respect to the Carriveaus was neither accidental nor sporadic. *See Teamsters,* 431 U.S. at 336. Instead, based on Plaintiff's complaint, the violation was the natural result of Defendant's repossession practices and procedures. The fact that failing to check the DMDC database or conduct any other SCRA screening was not in violation of any other law is immaterial if, as a result of that practice, a servicemember's property is repossessed. Because Plaintiff has shown that additional violations were plausible – and even likely – as a result of this practice, and because information regarding any additional violations of § 3952(a) are likely within the control of Defendant, Plaintiff has sufficiently alleged a pattern or practice that would likely lead to violations of § 3952(a) for the purpose of the motion to dismiss stage. If discovery does not bear out Plaintiff's claims, the issue may be revisited at the summary judgment stage. Defendant's motion to dismiss will be denied.

## III.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss, ECF No. 7, is **DENIED.**

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: January 5, 2017

- 7 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 5, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager